# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHARON MORNINGRED, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No.:10-272(MPT) |
| : | |
| DELTA FAMILY-CARE & SURVIVORSHIP : | |
| PLAN, SEDGWICK CLAIM : | |
| MANAGEMENT SERVICES, INC. : | |
| : | |
| Defendants. : | |

## **MEMORANDUM ORDER**

Plaintiff Sharon Morningred filed suit against defendants Delta Family-Care & Survivorship Plan ("the Plan") and Sedgwick Claim Management Services ("Sedgwick CMS") on April 6, 2010 following Sedgwick CMS's denial of short-term disability benefits and the denial of an administrative appeal thereof. In that action, Morningred alleged Sedgwick CMS violated § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA)[1] by arbitrarily and capriciously denying her benefits short term disability benefits.

In a memorandum order dated March 29, 2011, the court granted in part and denied in part Sedgwick CMS's motion for summary judgment finding that, although Sedgwick CMS properly considered all the relevant evidence, Sedgwick CMS's ultimate finding did not correspond to the evidence. The court remanded the case to the plan administrator for a decision in accordance with the memorandum order. Following the issuance of the court's order, defendants filed a motion for clarification regarding the

---

[1] 29 U.S.C. § 1132(a)(1)(B).

scope of the remand and plaintiff filed a motion for reargument.

I.      Defendants' Motion for Clarification

In their motion for clarification, defendants ask the court to clarify its order and find that the only issue to be covered on remand is the question of claimant's disability between July 1, 2008 and July 23, 2008. Defendants also ask the court to find that Morningred has no basis for further claiming any short-term disability benefits under the Plan from July 24, 2008 through November 28, 2008. In her answer, Morningred argues that the court's order is unclear whether the it constitutes an interlocutory decision or a final judgment. If the order constitutes an interlocutory order, Morningred argues, the court is required to set a time limit for Sedgwick CMS to make a decision. Further, Morningred argues, the court does not provide for any retention of jurisdiction following a decision on remand.

In its decision, this court found that Sedgwick CMS "ultimately relied" on the medical opinion of Dr. Robert L. Marks who found that, with proper treatment, Morningred should have been able to return to work after a six to eight week convalescence period following her injury. Due to an apparent error in arithmetic, however, this convalescence period did not correspond to Sedgwick CMS's disability finding. Consequently, the court ordered a remand for a determination of whether Morningred was unable to engage in her customary occupation as a result of a demonstrable injury or disease during the time period between July 1, 2008 and July 23, 2008. The court found that Sedgwick CMS's decision to deny short term disability benefits following this six to eight week convalescence period is supported by substantial evidence. This was the court's only finding regarding the remand.

Additionally, because the parties both conceded that the issue of long term disability benefits was premature without a decision on the subject by the administrator, the court did not address or decide long term disability benefits.

The Third Circuit has defined a "judgment" as "a decree and any order from which an appeal lies."[2] Generally, the Third Circuit has also found that "district court orders remanding cases to administrative agencies are not final and appealable."[3] The exception to the general rule applies "when a District Court finally resolves an important legal issue in reviewing an administrative agency action and denial of appellate review before remand to the agency would foreclose appellate review as a practical matter."[4] In the instant case, neither party has alleged that remand would foreclose appellate review as a practical matter. Consequently, the court's decision to remand is not considered final for the purposes of an appeal to a higher court and is an interlocutory order. Therefore, any appeal from Sedgwick CMS's decision pursuant to the court's order remains within the jurisdiction of this court.

II.     Motion for Reargument

In a separate motion for reargument, Morningred seeks to correct a clear error of fact and prevent manifest injustice regarding the court's finding of waiver and certain arguments by defendants.

---

[2] *O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 353 (3d Cir.1981) (quoting Fed. R. Civ. P. 54).

[3] *Bhd. of Maintenance Way Employees v. Consol. Rail Corp.*, 864 F.2d 283, 285 (3d Cir.1988).

[4] *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 120 (3d Cir.1999).

3

Reargument under the District of Delaware's local rules "attempts to balance the interests in obtaining a final decision on matters presented to the Court and the recognition that the Court, like all others, is capable of mistake and oversight."[5] Well-grounded motions for reargument thus "present the court with an opportunity to correct erroneous rulings."[6]

Such motions are granted sparingly, however, and in narrow circumstances.[7] A court will grant reargument when: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; or (3) the court has made an error not of reasoning but of apprehension.[8] Reargument may also be appropriate where the moving party shows (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a manifest injustice.[9]

---

[5] *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990) (citations omitted).

[6] *BP Amoco Chem. Co. v. Sun Oil Co.*, 200 F. Supp. 2d 429, 432 (D. Del. 2002).

[7] *See* Del. L.R. 7.1.5; *BP Amoco*, 200 F. Supp. 2d at 432.

[8] *See, e.g.*, *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998) (citing *Brambles*, 735 F. Supp. at 1241).

[9] *See, e.g.*, *Donald M. Durkin Contracting, Inc. v. City of Newark*, Civ No. 04-163, 2006 WL 2724882, at *3 (D. Del. Sept. 22, 2006) (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (discussing standard for motion to alter or amend a judgment under Fed. R. Civ. P. 59(e))); *see also, e.g.*, *New Castle County v. Hartford Accident and Indem. Co.*, 933 F.2d 1162, 1176-77 (3d Cir. 1991) (stating that a motion for reargument under local rules challenging the correctness of a previously entered order is considered the "functional equivalent" of a motion under Rule 59(e)) (citations omitted).

### A. Waiver of Procedural Defects in the Initial Denial Letter

In the memorandum order, the court found that Morningred had waived her claim regarding certain procedural defects in Sedgwick CMS's initial denial letter due to her failure to raise the issue to the administrator. In her present motion, Morningred counters that the denial letter did not explicitly state that procedural insufficiencies must be first presented to the administrator and that Morningred's present counsel raised the issue regarding the procedural defects to Sedgwick CMS in a letter dated July 9, 2009.

The administrator initially denied Morningred's claim on September 30, 2008 and rendered its final decision on April 8, 2009. Three months after Sedgwick CMS's final decision, counsel for plaintiff informed Sedgwick CMS that plaintiff had retained his representation in her pursuit for both short term and long term disability benefits. In his July 2009 letter, plaintiff's counsel requested Sedgwick CMS re-open the appeal process with regards to the administrator's September 30, 2008 denial of short term disability benefits due, in part, to vagueness, the administrator's failure to reference the specific plan provisions upon which the denial was based, and the administrator's failure to provide plaintiff with a copy of the Plan. On August 7, 2009, a representative for Sedgwick CMS denied the request to reopen the appeal stating that under the Plan's procedures, a claimant is afforded only one level of appeal and that administrator cannot reopen the appeal process upon its exhaustion.[10]

---

[10] The court notes that neither plaintiff nor defendants made any reference to any document in this exchange until the immediate motion for reargument. Although the request to reopen the appeal and the subsequent denial letter were included in the parties' exhibits in the cross-motions for summary judgment, it is not the duty of the court to pore over the almost 1,000 page administrative record in order to glean this

In its initial motion for summary judgment, Sedgwick CMS argued that Morningred's claim was procedurally barred for a failure to exhaust her administrative remedy. However, the record demonstrates that the administrator provided Morningred with a substantive response to her claim. After denying Morningred her request to reopen the appeal due to the unavailability of further appeal, the August 7, 2009 denial letter also informed Morningred that Sedgwick CMS considered the initial claim denial "sufficient" in providing Morningred with enough information to request a review of the denial and that any inadequacy of the initial claim denial was "harmless error."[11]

In its original order, the court found that "[w]here ERISA requires claimants first address their complaints to a designated fiduciary to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits, the court will not intervene."[12] As a result of Sedgwick CMS's response to Morningred's request to reopen the appeal, it appears that Morningred did address her complaint to the designated fiduciary and received both a procedural and substantive denial. Further, the Third Circuit has reasoned that exhaustion is generally required to (1) allow the appropriate agency to develop a factual record and apply its expertise to facilitate a judicial review; (2) permit agencies to grant the relief requested in order to conserve judicial resources; and (3) provide agencies the opportunity to correct their own errors in

---

information.

[11] D.I. 48, Ex. 1 at 6.

[12] *Morningred v. Delta Family-Care & Survivorship Plan*, Civ. No. 10-272-MPT, 2011 WL 1195771, at *4 (D. Del. Mar. 29, 2011).

order to foster autonomy.[13] Here, Sedgwick CMS's August 7, 2009 letter evidences a developed record wherein the administrator was afforded the opportunity to correct any procedural defects and apply its expertise regarding the Plan. The court finds that the record demonstrates Morningred's exhaustion of her administrative remedies.[14] As a result of this evidence, which neither party raised in the previous cross-motions for summary judgment, the court grants Morningred's motion for reargument and addresses the alleged procedural defects in Sedgwick CMS's initial denial letter.

### B. Sufficiency of Sedgwick CMS's Initial Denial Letter

The code of federal regulations requires that denial letters inform a claimant:

> [I]n a manner calculated to be understood by the claimant ... (I) [t]he specific reason or reasons for the adverse determination; (ii) [r]eference to the specific plan provisions on which the determination is based; (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[.][15]

Sedgwick CMS's initial denial letter informed Morningred that a claim for disability under the Plan requires "objective evidence to substantiate the disability claim," and that "[b]ased on a clinical review of [her] claim, [there was] no objective medical documentation to support [the] diagnosis."[16] The letter advised Morningred that there

---

[13] *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996).

[14] As the letter also provides that "Ms. Morningred has exhausted her administrative remedies available to her under the Plan," it would appear that the administrator would concur with this finding.

[15] 29 C.F.R. § 2560.503-1(g)(1).

[16] D.I. 31, Ex. C at SMM 00507.

7

appeared to be "no consistent treatment plan, other than physical therapy, appropriate for this diagnosis," and consequently denied her short-term disability claim beyond June 30, 2008.[17]

The letter further instructed Morningred that if she wished to appeal the decision, to send a written request to the administrator including "the reason(s) you believe your claim was improperly denied [and] any additional comments, documents, records or other information relating to your claim that you deem appropriate for us to give your appeal consideration."[18] Sedgwick CMS then specified the type of medical information required, such as:

- A detailed narrative report for the entire period of absence outlining the specific physical and/or mental limitations related to your condition that your doctor has placed on you; physician's prognosis, including course of treatment, frequency of visits, and specific medications prescribed;
- Diagnostic studies conducted during the above period, such as test results, X-rays, laboratory date, and clinical findings;
- Any information specific to the condition(s) for which you are claiming disability that would help us evaluate your disability status; and
- Any other information or documentation your think may help in reviewing your claim.[19]

Sedgwick CMS closed the denial letter by offering to provide Morningred with a copy of the documents, records, or other information relevant to her claim upon request

---

[17] *Id.*

[18] *Id.*, Ex. C at SMM 00508.

[19] *Id.*

and informed her of her right to an appeal under Section 502(a) of ERISA.[20]

The administrator's initial denial letter clearly outlined the specific reasons for the adverse determination and provided Morningred with a description of the additional material necessary to perfect her claim. The letter, however, failed to reference the specific plan provisions on which the determination was based as required under 29 C.F.R. § 2560.503-1(g)(1)(iii).[21] Case law in the Third Circuit has found that a notice is sufficient if it is "in substantial compliance with the governing regulation."[22] A denial letter is substantially compliant with the regulations when the claimant is provided "a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review."[23] The specifications in the letter, combined with an extensive back and forth between the administrator and Morningred, evidences a clear recital of the administrator's position

---

[20] *Id.*

[21] Plaintiff's original cross-motion for summary judgment alleged only that the administrator's initial denial letter violated the regulation due to a insufficient description of the material or information necessary for the claimant to perfect the claim and an insufficient explanation of why such material and information was necessary. The original motion did not contest the lack of a reference to the specific plan provision upon which the determination was based but, for the sake of statutory compliance, the court addresses the consequences of this omission.

[22] *Brown v. First Reliance Standard Life Ins. Co.*, 2011 WL 1044664, at *9 (W.D. Pa. Mar. 18, 2011) (citing *Mazur v. Hartford Life & Accident Co.*, Civ. No. 06-1045, 2007 WL 4233400 (W.D. Pa. Nov. 8, 2007)); *see also Kao v. Aetna Life Ins. Co.*, 647 F. Supp. 2d 397, 411 (D.N.J. 2009); *Russell v. Paul Revere Life Ins. Co.*, 148 F. Supp. 2d 392, 410 (D. Del. 2001).

[23] *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997) (internal quotation marks and citations omitted), *abrogated on other grounds*.

9

regarding Morningred's disability determination. Despite the missing references to the specific plan provisions that led to the denial of benefits, Sedgwick CMS provided Morningred with a clear reason for the denial and the specific steps necessary to perfect her claim. Nothing more was required.

      C. The Court's Reliance Upon Defendant's Legally Erroneous Arguments  In the memorandum order, the court noted Morningred's argument that the submitted medical evidence demonstrates a number of diagnoses outlining the very medical criteria requested by the initial denial letter. In rebuttal, defendants countered that although some medical evidence supported a finding of CRPS, there existed conflicting medical opinions regarding the causes of Morningred's disability and her ability to return to work. When presented with conflicting medical opinions, Sedgwick CMS argued, the Plan granted the administrator complete discretion to weight the conflicting evidence and render a decision. In listing this conflicting medical evidence, the court remarked that although one of the examiners, Dr. Robert Veripapa, found "some discoloration" in Morningred's ankle, that other examinations were "negative."[24] Morningred argues that the medical literature provides that the "most important role for testing is to help rule out other conditions,"[25] and that a "negative" test supports a finding of CRPS. Defendants statements, argues Morningred, led the court to weigh the absence of objective testing

---

      [24] *Morningred v. Delta Family-Care & Survivorship Plan*, 2011 WL 1195771, at *5.

      [25] *Complex Regional Pain Syndrome Fact Sheet* (Feb 18, 2011), http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/detail_reflex_sympathetic_dystrophy.htm#174993282.

as evidence of the non-existence of plaintiff's CRPS and any causal disability. In contrast to her argument, however, the court did not weigh the medical evidence and find that the evidence weighed against the existence of Morningred's CRPS. The court made note of Dr. Marks' contrary medical opinion and found Sedgwick CMS's decision to credit the opinions of certain medical evidence over other contrary medical evidence was proper under the law.[26] Whether Dr. Veripapa's opinion supported a finding of Morningred's disability or opposed such a finding would not have affected the court's finding that Sedgwick CMS was granted complete discretion to weigh conflicting medical evidence and then render a decision.

Morningred next asserts that the defendants characterized Dr. Howard I. Levin as the "plaintiff's physician" when, in fact, Dr. Levin was retained by defendants in connection with Morningred's workers' compensation proceeding. Morningred argues Dr. Levin's position, that she was unable to return to her previous position but should have been able to work in a sedentary position, conflicts with that of Dr. Marks, who was also retained by Sedgwick CMS. This conflict of opinion by two medical experts hired by Sedgwick CMS, Morningred argues, renders any evidence proffered by defendants unreliable. Morningred offers no authority for this conclusion and the evidence demonstrates that Morningred herself submitted Dr. Levin's report to the administrator for review. As a result, the court cannot find any basis to grant Morningred relief for this claim.

Finally, Morningred argues that the Supreme Court, in *Black & Decker Disability*

---

[26] *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-34 (2003).

*Plan v. Nord*, stated that a plan administrator may only credit "reliable evidence" that conflicts with a treating physician's evaluation. Dr. Bruce Grossinger, Morningred's treating physician, found that she suffered from reflex sympathetic dystrophy of the left lower extremity and could not return to her work as a baggage service agent where she was required to lift and carry bags and suitcases up to 100 lbs. According to Morningred, Dr. Marks' contrary conclusion, that she could return to her customary occupation after a six to eight week convalescence period, was not reliable because Dr. Marks mischaracterized her customary occupation as only "collecting and tagging leftover bags." Morningred explains that this conclusion ignored her actual job description which required her to lift a total of over ten tons each day and cannot be viewed as "reliable evidence." In his opinion, Dr. Marks stated that Morningred "had been working for Delta Air Lines where her duties included managing passenger baggage. Apparently, for security purposes, this also entailed collecting and tagging left-over bags (generally weighing 30 to 40 pounds but sometimes as heavy as 70 pounds.)"[27] In summarizing a conversation with Dr. Michael Kelman, Dr. Marks also noted that Morningred "worked as a ticket agent, but was required to lift passengers' luggage and bags."[28] This language, in addition to the observation that Morningred was required to collect bags weighing from 30-70 lbs, demonstrates that Dr. Marks did not ignore plaintiff's job description. Consequently, the court cannot find that Dr. Marks' decision is unreliable evidence, proscribed by *Nord*.

---

[27] D.I. 31, Ex. C at SMM 00037.

[28] *Id.* at SMM 0035-36.

III. Conclusion

Due to the incongruity between the administrator's decision and Dr. Marks' medical opinion, upon which the administrator ultimately relied, the court remanded Sedgwick CMS's decision for a judgment regarding the plaintiff's disability between July 1, 2008 and July 23, 2008. The opinion did not address any other reason for remand as noted herein.

The court grants plaintiff's motion to reargue Morningred's claim of procedural defects in Sedgwick CMS's initial letter due to evidence in the administrative record which the parties failed to reference in the initial cross-motions for summary judgment. However, after consideration of the substantive claim, the court finds that the initial denial letter substantially complied with the requirements outlined in the regulations and finds no error in the administrator's initial denial. The court denies the remainder of Morningred's motion for reargument and finds that the administrator based its decision upon reliable evidence. Therefore,

IT IS ORDERED, ADJUDGED and DECREED consistent with the findings herein that: defendants Delta Family-Care & Survivorship Plan and Sedgwick Claim Management Services' motion for clarification (D.I. 47) is **GRANTED** in-part insofar as the court clarified its earlier order and the reasoning behind the decision to remand Sedgwick CMS's decision to the administrator and **DENIED** in-part with regards to defendants' request to limit the scope of remand. Plaintiff Sharon Morningred's motion for reargument (D.I. 48) is **GRANTED** in-part as noted herein and **DENIED** as to the request for further briefing and to remand the entire factual record to the administrator

for reconsideration. On consideration of the arguments raised in reargument and on the original cross-motion for summary judgment, the court finds that the denial letter substantially complied with the requirements of ERISA and plaintiff's motion is **DENIED** in that regard.

Date:  June 30, 2011 /s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE